UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD BISHOP, | CIVIL DIVISION |
| Plaintiff, | Case No. 3:21-cv-31 |
| v. | |
| BLAIR COMPANIES, INC. t/d/b/a Blair Image Elements, | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

A.   *Preliminary Statement*

1.   The plaintiff Donald Bishop brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of his right to be free from employment discrimination, harassment and retaliation based upon his race. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* A jury trial is demanded.

B.   *Jurisdiction*

2.   The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3.   On or about September 30, 2020, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2020-02368. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4.   The EEOC issued a Notice of Right to Sue dated February 9, 2021.

5. This Complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C. **<u>The parties</u>**

6. The plaintiff is an adult individual who resides at 228 Fifth Street, Apartment 203, Altoona, PA 16602 (Blair County).

7. The defendant Blair Companies, Inc. t/d/b/a Blair Image Elements ("Blair" or "the company") is an entity doing business in the Commonwealth of Pennsylvania. At all times material, the defendant had a place of business located at within this district, specifically 5107 Kissell Avenue, Altoona, PA 16601 (Blair County).

8. The defendant is a company that manufactures signs and architectural imaging.

9. At all times material, the defendant employed more than fifteen employees.

10. The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D. **<u>Factual Background</u>**

11. The plaintiff (African American) was employed by Blair from May 4, 2020 through August 20, 2020.

12. The plaintiff was first employed as a packer and was later assigned to the job of assembler. As a packer, his responsibilities including building crates and packaging the signs inside of the crates for shipping. As an assembler, his responsibilities included building and wiring signs.

13. The plaintiff performed all of the functions of his job in a competent fashion and was a good worker.

14. Brian [last name unknown] (Caucasian) was the plaintiff's supervisor in the packing department.

15. Brian [last name unknown] (Caucasian) was the plaintiff's supervisor in the packing department.

16. Ken [last name unknown] (Caucasian) was the person who was assigned to train the plaintiff and another co-worker who was hired around the same time regarding the packing job. Ken would not look at the plaintiff and would not talk to him. Instead, he focused on the co-worker (Caucasian). The plaintiff said things like, "Hey, I'm here" and "Why won't you even look at me?" Ken responded, "Just pay attention" and "I don't have to look at you to train you; you'll catch on".

17. It was clear to the plaintiff that Ken had a problem with him because of his race. At one point, the plaintiff asked Ken, "Do you have a problem with black people?" Ken did not respond; he ignored the plaintiff and the question.

18. Ken was not the only one who showed antipathy towards the plaintiff because of his race. From time to time, the plaintiff could hear a co-worker singing a line from Dixie – "I wish I was in the land of cotton" – as he walked by. He could hear other co-workers snickering.

19. Near the end of his first week, the plaintiff approached Brian and told him that Ken would not look at him and refused to train him directly. The plaintiff told Brian that he thought Ken had a problem with him because of his race. Brian said, "I'll talk to him about it". However, nothing changed over the following days.

20. A couple of days later, the plaintiff approached Brian a second time about the issue and told him that Ken had not changed his behavior at all. Brian said that he would have

another talk with Ken.  If Brian did talk to Ken, it had no effect.  Ken still treated the plaintiff differently than the white co-worker.

21.    A couple of days later, the plaintiff went to the Human Resources ("HR") department after Ken's continued mistreatment.  The plaintiff spoke to Blair [last name unknown].  The plaintiff told Blair about the situation and told her that he believed that Ken was treating him differently because of his race.   Blair expressed concern about the situation and said that she would talk to Ken and even write him up if necessary.

22.    Ken's behavior did not change so the plaintiff went to Blair a second time, reiterating the fact that Ken does not like black people.  Blair said that she would schedule a meeting with Ken, Brian and the plaintiff to address the situation.

23.    The next day, Brian approached the plaintiff and said, "Why did you go to HR?  That makes me look bad that you went to HR.  Just come to me, I'll get it straightened out."  The plaintiff pointed out that he had talked to Brian twice and that he didn't get things straightened out yet.  Brian reiterated, "Just come to me".

24.    The next morning, Ken complained to the plaintiff about him "snitching" to HR.  He said, "you're just a fucking nigger" and then said in a loud voice, "I'll be here a lot longer than you, just wait and see; you'll be nothing more than a distant memory and I'll still be here."

25.    The situation was getting tense; several co-employees (all Caucasian) were standing around watching the confrontation between Ken and the plaintiff with smiles on their faces and shaking their heads up and down when Ken said, "I'll be here a lot longer than you" and saying, "That's right, Ken!"  After the confrontation, several of the co-employees walked up to Ken and shook his hand, treating him like some kind of folk hero.

26. Randy Swope (Caucasian), the General Manager came by and took Ken and the plaintiff to the office and put them in two separate rooms. Swope talked to Ken first and then came to the room that the plaintiff was in. He asked the plaintiff, "So, what's going on? I know you went to HR about this, but you should have gone to Brian, not HR." The plaintiff explained that he tried talking to Brian on more than one occasion and, when nothing happened, he decided to go to HR. He told Swope that Ken wouldn't train him and that Ken does not like black people. He also told Swope that Ken had just called him a nigger.

27. Swope did not condemn what Ken had done or said, instead downplayed the significance and said, "Well, life is hard".

28. The plaintiff also told Swope about hearing co-workers singing lines from racist songs like Dixie as he walked by – to which Swope responded, "I can't believe anybody did that" – and that the company should have some sort of diversity program and training to educate the workforce. Swope responded, "We don't need that; we've had colored people work here and never had a problem".

29. Swope and the plaintiff got into a heated debate about how he was being treated. Swope said that he was not going to fire Ken over this incident. Finally, Swope said, "I'm going to move you to another building". He followed up by "reassuring" the plaintiff that this move is "not punishment".

30. On or about June 15, 2020, the plaintiff was moved to the assembly department and began work as an assembler. The plaintiff's supervisor was Matthew Strobe (Caucasian). Ken remained in his position in the packing department.

31. Every couple of days, Ken would show up in the assembly department and just hung out with a couple of the other co-workers. He smirked at the plaintiff and said, "I told you. I'm still here in packing."

32. Strobe provided the plaintiff with reviews in June and July. Both times he told the plaintiff that the plaintiff was doing a good job, exercising good judgment and safety. The only issue was that he wanted the plaintiff to work on was to "pick up the speed a little bit".

33. The plaintiff's performance was reviewed a third time, on August 17, 2020, less than a month since the July review. Strobe said that the plaintiff's work ethic was excellent, but he still needed to work on his speed.

34. Three days later, on August 20, 2020, Randy met with the plaintiff and told him that his employment was being terminated because his performance did not meet expectations. It was clear that the reviews in June, July and August were done to create a pretext to terminate the plaintiff's employment at the earliest possible opportunity. Similarly situated white employees were not subjected to three performance reviews in less than 90 days.

35. The reason given for the plaintiff's termination was nothing more than a pretext and the real reason that he was fired was because of his race. Further, the plaintiff was terminated in retaliation for raising the issue of his discriminatory treatment with HR.

## **FIRST CAUSE OF ACTION**

36. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

37. The plaintiff is African American and thus is protected against discrimination, harassment and retaliation on the basis of his race pursuant to Title VII.

38. The plaintiff was qualified for his position.

39. Despite his qualifications, the plaintiff was terminated. The reasons given for his discharge were a pretext.

40. The defendant's discharge of the plaintiff was because of his race in violation of Title VII.

41. Further, the defendant created, fostered and maintained a hostile work environment based on the plaintiff's race.

42. The defendant failed and refused to take action when the plaintiff went to management and complained about the hostile work environment and the discriminatory treatment to which he was subjected.

43. The defendant retaliated against the plaintiff for raising these issues.

44. The defendant's violation of Title VII was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of race discrimination.

**SECOND CAUSE OF ACTION**

45. The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

46. As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination and harassment under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*

WHEREFORE, the plaintiff respectfully requests judgment be entered in his favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII and the PHRA, including attorney's fees and costs.

                              Respectfully submitted,

                              */s/ Michael J. Bruzzese*
                              Michael J. Bruzzese
                              Pa. I.D. No. 63306
                              2315 Koppers Building
                              436 Seventh Avenue
                              Pittsburgh, PA 15219
                              (412) 281-8676
                              Counsel for the plaintiff

Dated: March 3, 2021